# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| LAURA M.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  Civil Action No. 7:17-cv-436 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Laura M. ("Laura") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Laura alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to provide an adequate explanation regarding his consideration of the prior ALJ's decision in a prior benefits determination; (2) not evaluating the effects of Laura's morbid obesity on her RFC; (3) improperly evaluating the opinions of Laura's treating primary care physician; and (4) failing to properly determine Laura's mental RFC limitations.

This case is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). (Dkt. 8.) The parties have fully briefed all issues and the case is ripe for decision. I conclude that the ALJ failed to properly account for Laura's moderate impairments in concentration, persistence, or pace, and thus substantial evidence does not support the ALJ's decision.

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

1

Accordingly, I **GRANT in part** Laura's motion for summary judgment (Dkt. 15),[2] **DENY** the Commissioner's motion for summary judgment (Dkt. 16), and **REVERSE AND REMAND** this case for further administrative proceedings consistent with this opinion.

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Laura failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's

---

[2] While Laura has not submitted a formal motion, I will construe her brief as a motion for entry of summary judgment in her favor.

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In <u>Mascio</u> and <u>Monroe</u>, the Court of Appeals remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. <u>Mascio</u>, 780 F.3d at 636; <u>Monroe</u>, 826 F.3d at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion leaves the Court to guess at how he reached his conclusions regarding Laura's mental RFC.

## **CLAIM HISTORY**

This is Laura's second application for both DIB and SSI benefits. She previously filed for benefits on July 22, 2010. Ultimately, ALJ Frederick Johnson issued a decision on November 30, 2012, finding Laura not disabled. R. 88.

Laura filed this application for DIB and SSI on March 27, 2014, claiming that her disability due to rheumatoid arthritis, fibromyalgia (all eighteen pressure points), anxiety, bipolar, panic attacks, depression, insomnia, borderline diabetes type II, herniated disc, and back and neck surgery began on September 1, 2014,[4] when she was forty-six years old. R. 37, 95, 105. Laura's date last insured was September 30, 2014; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 95; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Additionally, to receive SSI, Laura must show that she has been disabled for at least twelve months prior to the date of filing her disability application. The state agency denied Laura's applications at the initial and reconsideration levels of administrative review. R. 95–114, 117–40. On February 9, 2017, ALJ John Dawkins held a hearing to consider Laura's claims for DIB and SSI. R. 33–63.

---

[4] In her application, Laura listed December 1, 2012, as her alleged onset date, but amended that date to September 1, 2014, at the administrative hearing. R. 95, 105. Curiously, the ALJ (R. 18), Laura (Pl.'s Br. at 2, Dkt. 15), and the Commissioner (Def.'s Br. at 2, Dkt. 17) all listed the incorrect date.

3

Counsel represented Laura at the hearing, which included testimony from vocational expert John Newman. On April 20, 2017, the ALJ entered his decision analyzing Laura's claims under the familiar five-step process[5] and denying her claim for benefits. R. 15–26.

The ALJ found that Laura had not engaged in substantial gainful activity since December 1, 2012, the alleged onset date. R. 18. The ALJ determined that Laura suffered from the severe impairments of morbid obesity; diabetes mellitus; degenerative joint disease of the knee; degenerative disc disease of the cervical and lumbar spine status post-discectomy; and post-traumatic stress disorder. Id. The ALJ found that Laura's alleged fibromyalgia was not a medically determinable impairment because the medical evidence did not establish a fibromyalgia diagnosis as required by SSR 12-1p. R. 18–19. The ALJ determined that all of Laura's impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 19–20. Specifically, the ALJ considered listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). R. 19. The ALJ recognized that diabetes mellitus is not a listed impairment for adults, but determined that its effects, either alone or in combination with other impairments, did not meet or medically equal the criteria of a listing in affected body systems. Id. The ALJ considered listing 12.15 (trauma- and stressor-related disorders) for Laura's mental impairments. R. 19. The ALJ considered the "paragraph B" criteria regarding Laura's mental impairments and determined that they were not satisfied, finding that Laura had:

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing herself. R. 20. The ALJ likewise found that the "paragraph C" criteria were not satisfied. Id.

The ALJ concluded that Laura retained the residual functional capacity ("RFC") to perform light work. R. 21. Specifically, the ALJ found that Laura could occasionally crouch, stoop, balance, and climb ramps/stairs, and could never crawl, kneel, or climb ladders, ropes, or scaffolds. Id. She could not work around temperature extremes, humidity, noise, vibration, or hazards. Id. Laura would be limited to simple, routine tasks in a work environment with few day-to-day changes and no work with the general public. Id. The ALJ determined that Laura is unable to perform her past relevant work as a retail store owner, but that she could perform jobs that exist in significant numbers in the national economy, such as assembler, sorter, and packer. R. 24–26. Thus, the ALJ concluded that Laura was not disabled. R. 26. Laura appealed the ALJ's decision and the Appeals Council denied her request for review on July 19, 2017. R. 1–3.

## ANALYSIS

Laura alleges that the ALJ erred by: (1) failing to provide an adequate explanation regarding his consideration of the prior ALJ's decision; (2) not evaluating the effects of Laura's morbid obesity on her RFC; (3) improperly evaluating the opinions of Laura's treating primary care physician; and (4) failing to properly determine Laura's mental RFC limitations.

**A. Medical History**

1. Physical Impairments

Laura claimed rheumatoid arthritis, fibromyalgia at all eighteen pressure points, borderline type II diabetes, herniated disc, insomnia, and disability from back and neck surgery

5

in her initial disability report. R. 95–96, 105–06. The earliest medical records in the record from Climax Family Practice in February 2012 indicate that Laura had been diagnosed with chronic pain syndrome, fatigue, bipolar disorder, degeneration of lumbar or lumbosacral disc, and osteoarthrosis. R. 376. Laura had consistent assessments for right knee pain, inflammation, or other issues (R. 354, 358, 360, 406, 409, 424, 427, 470, 490, 494) for which she received multiple injections (R. 342, 345, 358, 360, 376, 407–09, 490); morbid obesity (R. 399, 403, 424, 427, 494, 511, 514, 529, 532); chronic pain (R. 381, 406, 514, 517, 623, 630); fibromyalgia (R. 469, 490, 491, 494, 517, 623); and type II diabetes (R. 470, 490, 511, 529, 532, 623, 630). Laura testified that she is on pain medication, which is reflected in the record. R. 44, 345, 350, 352, 354, 356, 358, 360, 364, 366. She also went on and off of Lyrica over time to help with pain, but testified to no longer taking it. R. 44, 406, 409, 469, 491. Laura was in a car accident in 2015 that injured her back and neck, although her treatment records indicate that she suffered only a sprained neck. R. 41, 48, 505, 529. In March 2016, a CT showed Laura had cervical stenosis of the spine with foraminal narrowing L side C5-C6, and C6-C7 stenosis with DJD. R. 514.

Laura indicated in her pain questionnaire that most of her body hurts at all times, and nothing alleviates the pain, particularly in her back. R. 44, 280. Laura testified that anything makes her pain worse, especially because of the fibromyalgia. R. 45–46. At the time of the hearing, Laura's diabetes was causing additional tingling, burning, and numbness in her hands and feet. R. 43. Laura is able to make only simple meals for herself, and she sometimes requires help dressing and bathing. R. 45–46. Laura can manage her own money, wash dishes, and do laundry. R. 286. In her fatigue questionnaire, Laura indicated that she feels fatigued every day, largely because she does not sleep at night. R. 311–12.

Laura's doctors regularly observed that her pain and joint issues were in large part due to

her obesity, and regularly noted that she needed to lose weight, exercise, and work on her diet. R. 368, 370, 372, 374, 376, 403, 406, 428, 470, 501, 511, 533. In May 2016, her primary care doctor noted that Laura "needs to take some ownership of her health and not rely on meds to correct all her issues." R. 511. Her doctors also noted that Laura exhibited a lack of urgency in taking care of her health issues; for example, she did not follow through with her multiple pain management referrals and did not schedule tests, like CTs. R. 514, 518. At the hearing, Laura addressed her non-compliance and stated that she frequently had trouble adhering to appointments and treatment because she did not have a car or a license, her abusive boyfriend controlled their finances, and at one point, her house burned down. R. 47.

2. Mental Impairments

Laura underwent a behavioral health screening in May 2014. R. 441. Following that assessment, Laura had therapy appointments with Jennifer Price, LCSW. There are numerous assessments in the primary care and therapy records of assessments for mood disorder (R. 457, 458, 461, 474, 477, 480, 483, 486, 496, 503, 511, 603, 606, 608, 611) and PTSD (R. 457, 458, 461, 470, 474, 477, 483, 486, 490, 496, 503, 603, 606, 608, 611). She also had many assessments for depressive disorder (R. 403, 406, 409, 427, 511, 521), anxiety disorder (R. 480), and bipolar disorder (R. 381, 399, 464). She was regularly on medication for her mental health conditions. R. 345, 350, 352, 354, 356, 358, 360, 364, 366, 368, 403, 406, 409, 428, 459, 464, 480, 490, 494, 511. Her providers again reported that Laura was "largely non-compliant" with her mental health treatment. R. 603, 606, 608, 611.

Laura testified that she no longer attends church or other social engagements because of her anxiety. R. 47. She goes to the store only twice per month because she has panic attacks. R. 49. In her function questionnaire, Laura reported she can follow written instructions if she

understands them and can follow spoken instructions. R. 288. Laura testified that during the day, she watches TV, but her mind wanders. R. 45. She estimated that she can focus for only ten minutes before her concentration fails. Id. She also testified that she reads a variety of books, was able to complete a driving exam, and is able to take care of herself. R. 50, 52, 54.

    3.  Medical Opinion Evidence

In September 2014, as part of the state agency's initial disability determination, Tony Constant, M.D., reviewed the record and determined that Laura's medically determinable impairments included major joint dysfunction and obesity, which were severe, and affective disorders, which were non-severe. R. 99, 109. As part of Laura's physical RFC evaluation, Dr. Constant found that Laura could: lift or carry twenty pounds occasionally and ten pounds frequently; stand and walk or sit for six hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; and balance without limitation. R. 101–02, 111–12. He found no manipulative, visual, communicative, or environmental limitations. R. 102, 112. Dr. Constant determined that Laura was capable of light work. R. 103, 113. During this initial evaluation, Jo McClain, Psy.D., conducted a psychiatric review technique and found that, because her depressive disorder was well-managed, Laura would have no work-related restrictions. R. 100, 110. Dr. McClain determined that the "paragraph B" criteria were not satisfied, and found that Laura had no restriction in activities of daily living, no difficulties maintaining social functioning, mild difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation. Id. Dr. McClain likewise determined the "paragraph C" criteria were not satisfied. Id.

As part of Laura's request for reconsideration of the state agency's disability

8

determination, Brian Strain, M.D., reviewed the record and determined that Laura's medically determinable impairments of dysfunction of major joints, obesity, and spine disorders were severe, and her affective disorders were non-severe. R. 123, 135. Dr. Strain found the same exertional limitations as Dr. Constant. R. 125, 137. For postural limitations, Dr. Strain found that Laura could occasionally climb ramps or stairs, balance, stoop, and crouch, and never climb ladders, ropes, or scaffolds, kneel, or crawl. Id. Dr. Constant also found that Laura did not have any manipulative, visual, or communicative limitations, but determined that she would have to avoid concentrated exposure to extreme cold and heat, humidity, noise, vibration, and hazards. R. 125–26, 137–38. Dr. Constant similarly concluded that Laura would be capable of light work. R. 127, 139. For the psychiatric review technique assessment, Linda Dougherty, Ph.D., made the exact same findings as Dr. McClain, including that Laura would not have any work-related restrictions due to her mental condition. R. 123, 135.

Laura's primary care physician, Abraham B. Hardee, III, D.O., completed a medical source statement on January 28, 2015, for Laura's overall condition due to her morbid obesity, fibromyalgia, PTSD, and hypertension. R. 433. He stated Laura could not be reliable in attending a forty-hour work week, week after week, without missing more than two days per month. Id. Dr. Hardee stated that Laura would have limitations with standing and walking, but did not suggest limitations in sitting, stooping, or climbing. Id. He stated Laura could never lift more than twenty-one pounds, and could frequently lift six to ten pounds. Id. Dr. Hardee indicated that Laura would be able to bend and push or pull occasionally and use her hands for gross or fine manipulation frequently. Id. He indicated that Laura's condition would cause moderate pain, but that Laura would not have a reasonable medical need to lie down during the day. R. 433–34. Dr. Hardee estimated that Laura would be off task due to her condition thirty percent of the time in

an average workday. R. 434. In terms of mental impairments, Dr. Hardee estimated that Laura would be occasionally precluded from: understanding and remembering very short, simple instructions; understanding and remembering detailed instructions; performing activities within a schedule and maintaining regular attendance; sustaining an ordinary routine; and maintaining attention and concentration for extended periods of time. Id. He estimated her mental condition would cause Laura to be frequently precluded from adapting to ordinary stress or changes in the workplace, and she would not be able to function when working in coordination with or proximity to others without being distracted. Id. In terms of social interaction, Dr. Hardee indicated no limitation in interacting appropriately with the general public, and did not know if Laura had limitation in accepting instructions and responding appropriately to criticism. Id. He indicated she was limited in asking simple questions and requesting assistance, getting along with coworkers, and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. Id. Finally, Dr. Hardee stated Laura's back pain affects her sleep, but Laura's condition or medication would not cause a lapse in memory or concentration. Id.

Later in August 2015, Dr. Hardee completed a mental medical source statement. At the time, he was treating Laura for hypertension, morbid obesity, PTSD, lumbago, multiple joint pains, anxiety, and mood disorder. R. 508. Dr. Hardee wrote that Laura could be reasonably expected to work a forty-hour week on a regular basis without missing more than two days per month if Laura could alternate sitting and standing. Id. He estimated that Laura would decompensate or have increased psychological symptoms in a full-time employment setting if the work was too strenuous. Id. Unlike his previous assessment, he estimated Laura would be off-task eighty percent each day due to her condition. Id. Using check-the-box options, Dr. Hardee indicated that, in the area of understanding and memory, Laura would have mild

limitation in remembering locations and work-like procedures, and no limitation in understanding and remembering very short simple instructions or detailed instructions. R. 509. In the area of sustained concentration and persistence, Laura would have: no limitation in carrying out very short and simple or detailed instructions; mild limitations in maintaining attention and concentration for extended periods, performing activities within a schedule and maintaining regular attendance and punctuality, sustaining an ordinary routine without special supervision, and working in coordination with or proximity to others without being distracted by them; and moderate limitations in her abilities to make simple work-related decisions or to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. Id. In the area of social interaction, Dr. Hardee indicated that Laura would be mildly limited in all suggested areas, namely her abilities to interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. Id. Finally, in the area of adaptation, Dr. Hardee indicated that Laura would be mildly limited in her abilities to be aware of normal hazards and take appropriate precautions, and to travel in unfamiliar places or use public transportation; and moderately limited in her abilities to respond appropriately to changes in the work setting and to tolerate normal levels of stress. R. 509–10.

### B. Mental Impairments Under SSR 96-8P[6]

The ALJ concluded at step three that Laura suffers from moderate limitations regarding

---

[6] This was Laura's fourth assignment of error, but I will consider it first for reasons set forth below.

concentrating, persisting, or maintaining pace. R. 20. Laura argues that the ALJ failed to properly consider Laura's moderate impairment in these areas when developing his mental RFC and in posing the relevant hypothetical question to the vocational expert. Pl.'s Br. at 13–14, Dkt. 15. Specifically, Laura contends that, under Mascio v. Colvin, the ALJ failed to adequately explain how simple, routine tasks account for Laura's moderate limitations in concentrating, persisting, or maintaining pace. 780 F. 3d 632 (4th Cir. 2015). The Commissioner counters that the ALJ thoroughly discussed the evidence before him, and nothing in the record indicates that Laura's ability to focus, concentrate, and persist warrant greater limitations than those set forth in the RFC; thus, substantial evidence supports his RFC determination. Def.'s Br. at 14, Dkt. 17.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P, 1996 WL 374184, at *7 (1996); Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In his RFC determination, the ALJ limited Laura to simple, routine tasks in a work environment with few day-to-day changes and no work with the general public. R. 21. Thus,

because this was the only limitation in the RFC relating to Laura's mental abilities, the ALJ presumably imposed this requirement in response to Laura's moderate limitations in maintaining concentration, persistence, or pace, and interacting with others. In Mascio v. Colvin, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that, without such an explanation, remand was necessary. Id. Thus, while Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, it does underscore the ALJ's duty to adequately review the evidence and explain the decision. This is especially so where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitations do not affect the ability to perform simple, unskilled work. See also Monroe, 826 F.3d at 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

Here, the ALJ did not explain why a limitation to simple, repetitive work sufficiently accommodates Laura's moderate difficulties with concentration, persistence, or pace. At step three, the ALJ found moderate limitations in this area, and explained,

> [Laura] reported difficulty concentrating on a daily basis, but then indicated that she has been able to watch television shows and even read a book series to

completion. Overall, the claimant's complaints regarding concentrating and maintaining pace are warranted, as she feels overwhelmed when faced with situations that cause her anxiety. It is reasonable to find moderate limitations in this area.

R. 20. The ALJ found moderate limitations in these areas despite the contrary findings of the state agency physicians, writing that the mental health records demonstrated that Laura's mental limitations appear "further limited" than the state agency consultants suggested. R. 23. The ALJ later wrote:

> The mental health records repeatedly indicated tangential thoughts and a disheveled appearance. Despite these findings, her mental health treatment has been rather conservative and a treating source even not[ed] that the claimant "should not rely on medications to correct all her issues." In addition, records indicate that she has been uncooperative with treatment plans. At the hearing, the claimant testified that she engaged in activities such as reading, including a complete series of books without difficulty.

R. 24 (citations omitted). The ALJ then failed to properly account for these limitations in the RFC or explain why limitations regarding persisting or maintaining pace were not warranted. See Hagerdorn v. Colvin, No. 2:12-cv-29-RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (finding that limitations to simple, routine, and repetitive tasks in a low-production, low-stress work setting accounted for some of claimant's mental limitations, but not for his moderate limitations in concentration); Desilets v. Colvin, No. 2:14–cv–1693, 2015 WL 5691514, at *5 (D.S.C. Sep. 28, 2015) (remanding because RFC limiting claimant to "performing simple, repetitive tasks that are low stress and require no major decision-making or changes in the work setting" did not sufficiently address the claimant's moderate limitations in concentration, persistence, or pace).

At no point does the ALJ state that Laura has a moderate limitation in concentration, but not persistence or pace. The ALJ imposed a moderate limitation in concentration, persistence, or pace, but does not discuss whether Laura has a diminished ability to stay on task or maintain an

adequate pace. The ALJ only posed a hypothetical question to the vocational expert that included "simple routine tasks" (R. 59), yet this fails his obligation to explain why limiting Laura to "simple routine tasks" accommodates these moderate limitations. Thus, as in Mascio, this Court is "left to guess about how the ALJ arrived at his conclusions." 780 F.3d at 637. The ALJ's failure to explain *why* Laura's moderate concentration, persistence, or pace deficits did not translate into additional limitations in the RFC constitutes reversible error and requires remand. See id.; Nichols v. Colvin, No. 7:15-cv-44, 2016 WL 4529780, at *3–*4 (W.D. Va. Aug. 3, 2016); White v. Colvin, No. 4:14-CV-00018, 2015 WL 1958885, at *12 (W.D. Va. May 1, 2015). The ALJ must sufficiently articulate his findings such that the Court can undertake a meaningful review. Monroe, 826 F.3d at 189 (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence that ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence); see also Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (emphasizing the importance of "[r]eaching a decision in a well-reasoned and documented fashion" and admonishing an ALJ to "[s]how your work.").

The ALJ may very well conclude again that Laura is not disabled, and perhaps the ALJ can explain why limiting her to simple routine work accommodates Laura's moderate limitations in maintaining concentration, persistence, or pace. However, his failure to do so in this case is reversible error and requires remand.[7]

---

[7] Because I find that remand is warranted based on the ALJ's failure to properly account for Laura's moderate impairment in concentration, persistence, or pace, I will not address Laura's additional allegations of error. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Laura's remaining allegations of error.

15

## CONCLUSION

It is not the province of this Court to make a disability determination. The Court's role is limited to determining whether substantial evidence supports the Commissioner's decision. In this case, the ALJ failed to satisfy his duty of explanation, and meaningful judicial review is impossible. For the foregoing reasons, I will **GRANT in part** Laura's Motion for Summary Judgment, **DENY** the Commissioner's Motion for Summary Judgment, and **REMAND** this matter under sentence four of 42 U.S.C. § 405(g) for additional consideration.

Entered: March 22, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge